In the United States District Court
Eastern District of Texas
Sherman Division

| | |
|---|---|
| James Stevens § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. _____ |
| § | |
| Academy, Ltd. d/b/a § | |
| Academy Sports + Outdoors § | |
| § | |
| § | |
| Defendants. § | |

### Plaintiff's Original Complaint

Plaintiff James Stevens ("Mr. Stevens" or "Plaintiff") files this Original Complaint against Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy" or "Defendant") and shows:

### Parties

1. Plaintiff James Stevens is an individual citizen of Texas and a resident of Denton County, Texas.

2. Defendant Academy, Ltd. is a domestic limited partnership doing business in Texas. It may be served by serving its registered agent Delilah Banks, 1800 North Mason Road, Katy, Texas 77449.

### Venue and Jurisdiction

3. Venue is proper in Denton County, Texas because the events establishing the

claims occurred in Denton County, which is in the Eastern District of Texas.

4.   This Court has federal jurisdiction over the claims asserted under the ADEA, 29 U.S.C. § 621 *et. seq.* and supplemental jurisdiction of Mr. Stevens's Texas Labor Code Ch. 21 claims.

## Summary of Claim

5.   Academy discriminated against Mr. Stevens because of his age and retaliated against Mr. Stevens after he engaged in protected activity.  Mr. Stevens sues for age discrimination and retaliation.

## Factual Background

6.   Academy hired  Mr. Stevens on August 30, 2006 as an Assistant Store Manager and he worked at Lewisville and Fort Worth stores.  When Academy assigned Mr. Stevens to work in Store 122 in Flower Mound, Texas in 2014, it moved him to the Operations Manager role. The Flower Mound store is in Academy's R1D3.  Academy has 12 stores in R1D3.

7.   In 2020, Mr. Stevens was the oldest Operations Manager in District R1D3 when Mr. Stevens was terminated.

8.   Before November 2019, Academy employed Jim Strauss as the Store Manager at Store #122.  Before that, the Store Manager was Mike Hoops.  Both Mr. Hoops and Mr. Strauss gave Mr. Stevens good ratings in his performance reviews.

9. In 2019, during a conversation with Mr. Strauss, Mr. Stevens told Mr. Strauss he hoped to continue to work with Academy until he retired.

10. In 2019, Academy's District Manager Wally Amerson asked Mr. Stevens if Mr. Stevens was looking to retire. Mr. Stevens told Mr. Amerson that Mr. Stevens loved his job and had no intention of retiring at age 60 (his age at that time).

11. In 2019, Academy replaced Mr. Strauss with David Morris as Store Manager at Store #122.

12. Academy, through Mr. Morris, made ageist remarks about Mr. Stevens. Mr. Morris said things such as Mr. Stevens had been there too long. Mr. Morris told other employees that Mr. Stevens was too old, too slow, or took too long to get things done.

13. Academy, through Mr. Morris, made ageist remarks directly to Mr. Stevens and to other employees during the morning meetings.

14. Academy, through Mr. Morris, treated Mr. Stevens differently than his peers. Mr. Morris began to micromanage Mr. Stevens's job performance and harshly scrutinize his performance.

15. Though Academy only installed Mr. Morris as the Store Manager at Store #122 in November 2019, Mr. Morris wrote the performance review for Mr. Stevens for the entirety of 2019 even though Mr. Morris had only worked with Mr. Stevens for a few months.

16. Academy, through Mr. Morris, gave Mr. Stevens a negative performance review for the entirety of 2019 in February 2020.

17. Academy, through Mr. Morris, put Mr. Stevens on a Performance Improvement Plan ("PIP") on January 28, 2020.  This PIP was to be in effect from January 28, 2020 to March 28, 2020.

18. Academy imposed a condition under the PIP that Store #122 reach a goal of 1.5% on Academy credit card applications.  This goal meant that Academy wanted at least 1.5% of the customers served each day at Store #122 to be offered *and* sign up for an Academy branded credit card.  Because having its customers purchase products on an Academy branded credit card saved Academy millions of dollars each year in credit card processing fees, Academy pushes team members to request customers open and use the store branded credit card.

19. Because of the affluent demographics in Flower Mound, meeting the goal of 1.5% of customers signing up for an Academy branded credit card each day was not a realistic goal.  While that goal is feasible in different markets with different demographics, that goal was not realistic for Store #122.

20. Academy prepares monthly reports that compare the performance of each store in the application region.  In Store #122's region, Store #122 was in the middle of the pack in store performance as it relates to the credit card application goal.  Store #122 was not the highest achiever, but it was not the lowest in the region either.

21. When Academy, through Mr. Morris, put Mr. Stevens on the PIP, upon information and belief, Academy did not issue PIPs to the younger Operations Managers in the Region who also did not meet Academy's stated goal for credit card applications.

22. After Mr. Morris put Mr. Stevens on the PIP in January 2020, Mr. Stevens fulfilled the PIP and came off of the PIP.

23. Academy paid Mr. Stevens a bonus in June 2020. Under Academy's rules, Mr. Stevens would not have been paid the June 2020 bonus if Mr. Stevens were still on the PIP.

24. Academy, through Mr. Morris, repeatedly accused Mr. Stevens of not performing his job duties as it related to the credit card application goal.

25. Academy, through Mr. Morris, falsely accused Mr. Stevens of not conducting the required cashier observations and required cashier one-on-one counseling. However, Mr. Stevens did the required cashier observations and counseling. Mr. Stevens documented that he was doing these duties. Those records were available to Academy and Mr. Morris. Yet Mr. Morris falsely accused Mr. Stevens of not doing those duties.

26. Academy, through Mr. Morris, put Mr. Stevens on another PIP to run from July 30, 2020 to August 31, 2020. In this PIP, Mr. Morris increased the credit card application goals from 1.5% to 1.6%. Mr. Morris also included various goals for meeting with cashiers and counseling the for the credit card application goals.

27. After Mr. Stevens received this PIP, Mr. Stevens performed and did the required counseling and observation of cashiers as it relates to the credit card application goal. However, Store #122 struggled to meet the 1.6% credit card application goal---just like the other stores in R1D3.

28. Upon information and belief, Academy did not place the younger Operations Managers in R1D3 who did not meet the credit card application goal on a PIP in July 2020 or when Mr. Stevens was placed on this second PIP.

29. During 2020, several Academy cashiers reported concerns they were subjected to sexual harassment by Mr. Morris to Mr. Stevens. Mr. Stevens reported those concerns to Academy's Human Resources. Mr. Stevens also advised the employees on how to report their concerns to Human Resources.

30. Academy received the complaints of sexual harassment by Mr. Morris from the employees. Academy employees told Mr. Stevens they had moved forward with filing internal complaints of sexual harassment against Mr. Morris with Academy's Human Resources Department. Mr. Stevens understood that Academy's Human Resources department opened an investigation into those employee complaints.

31. Upon information and belief, the Human Resources employee who investigated the sexual harassment allegations against Mr. Morris was friendly with Mr. Morris and shared with Mr. Morris the details of the allegations made against him. Upon

information and belief, Mr. Morris was made aware that Mr. Stevens had told complainants how to file complaints with Human Resources.

32.   Academy fired Mr. Stevens on September 4, 2020.

33.   Academy told Mr. Stevens he was fired because he did not meet the credit card application goal of 1.6%.

34.   Academy, through Mr. Morris, wrote "Credit performance/Follow up" on the termination memo given to Mr. Stevens when Mr. Stevens asked the reason he was fired. A copy of Academy's termination memo is attached as Exhibit 1.

35.   When Academy fired Mr. Stevens, Mr. Morris falsely claimed in company documents that Mr. Stevens had been on a PIP continuously since January 2020.  That was false.  Mr. Stevens would not have been paid the June 2020 bonus had Mr. Stevens been on a PIP in June 2020.

36.   Upon information and belief, Academy has not fired the younger Operations Managers in R1D3 who failed to meet Academy's stated credit card application goal.

37.   Academy replaced Mr. Stevens with a younger male employee as Operations Manager.

38.   Upon information and belief, the younger Operations Manager who replaced Mr. Stevens has also struggled with meeting Academy's stated goal of 1.6% for credit card applications in Store #122.

39. Upon information and belief, the younger Operations Manager who replaced Mr. Stevens has not been terminated despite his failure to meet the stated goal for credit card applications.

40. After he was terminated, Mr. Stevens timely filed a charge of discrimination with the EEOC alleging age discrimination and retaliation. Mr. Stevens filed his EEOC Charge on October 9, 2020. Mr. Stevens received his dismissal and right to sue letter from the EEOC on June 23, 2021 and timely sues.

## Causes of Action

## Age Discrimination under ADEA

41. Mr. Stevens incorporates the preceding paragraphs as if restated.

42. Academy is an employer as defined by the ADEA, 29 U.S.C. § 630.

43. Mr. Stevens, age 60 when he was terminated,  is an employee covered by the ADEA. 29 U.S.C. § 630(f).

44. Academy discriminated against Mr. Stevens in the terms and conditions of his employment.  Academy, through Mr. Morris, micromanaged Mr. Stevens and subjected him to more scrutiny than that of younger employees.

45. Academy, through Mr. Morris, made ageist comments about Mr. Stevens directly to Mr. Stevens and to other employees.  Mr. Morris said things such as Mr. Stevens was too old, too slow or took too long to get things done. Mr. Morris said Mr. Stevens had worked there too long.

46. Academy, through Mr. Morris, falsely accused Mr. Stevens of not performing his job duties such as doing the required cashier observations and required cashier counseling. Mr. Stevens was performing those job duties. Mr. Stevens documented his performance of those job duties and the documents were readily available to Academy. Yet Academy falsely accused Mr. Stevens of not doing his duties and put him on a PIP and terminated him based in part on those false accusations.

47. Academy subjected Mr. Stevens to disparate treatment by putting him on a PIP for failure to meet the stated credit card application goal. Yet Academy did not place the younger Operations Managers in the same region who also failed to meet this stated credit card application goal on a PIP.

48. Academy subjected Mr. Stevens to disparate treatment by firing him for failure to meet the stated credit card application goal. However, Academy did not fire the younger Operations Managers in the same region who failed to meet the stated credit card application goal.

49. Academy discriminated against Mr. Stevens and terminated Mr. Stevens because of his age in violation of the ADEA. 29 U.S.C. § 623(a).

50. Academy's violations of the ADEA damaged Mr. Stevens. Mr. Stevens seeks to recover all legal and equitable relief to which he is entitled because of the discriminatory actions of Academy in violation of the ADEA.

51. Mr. Stevens seeks to recover his back pay and the value of his lost employment benefits, front pay, liquidated damages, the equitable remedy of reinstatement, prejudgment and post-judgment interest and his reasonable attorney's fees and costs.

## Age Discrimination under Texas Labor Code Chapter 21

52. Mr. Stevens incorporates the previous paragraphs as if restated.

53. Academy is an employer for Texas Labor Code § 21.002.

54. Mr. Stevens, age 60 when he was terminated, is protected from age discrimination under Texas Labor Code Chapter 21.

55. Academy discriminated against Mr. Stevens in the terms and conditions of his employment. Academy, through Mr. Morris, micromanaged Mr. Stevens and subjected him to more scrutiny than that of younger employees.

56. Academy, through Mr. Morris, made ageist comments about Mr. Stevens directly to Mr. Stevens and to other employees. Mr. Morris said things such as Mr. Stevens was too old, too slow or took too long to get things done. Mr. Morris said Mr. Stevens has worked there too long.

57. Academy, through Mr. Morris, falsely accused Mr. Stevens of not performing his job duties such as doing the required cashier observations and required cashier counseling. Mr. Stevens was performing those job duties. Mr. Stevens documented his performance of those job duties and the documents were readily available to Academy.

Case 4:21-cv-00502-SDJ   Document 1   Filed 06/30/21   Page 11 of 15 PageID #:   11

Yet Academy falsely accused Mr. Stevens of not doing his duties and put him on a PIP and terminated him based in part on those false accusations.

58. Academy subjected Mr. Stevens to disparate treatment by putting him on a PIP for failure to meet the stated credit card application goal. Yet Academy did not place the younger Operations Managers in the same region who also failed to meet this stated credit card application goal on a PIP.

59. Academy subjected Mr. Stevens to disparate treatment by firing him for failure to meet the stated credit card application goal. However, Academy did not fire the younger Operations Managers in the same region who failed to meet the stated credit card application goal.

60. Academy discriminated against Mr. Stevens in the terms and conditions of his employment and singularly subjected him to disparate treatment as compared to other employees because of his age in violation of Texas Labor Code § 21.051 and § 21.125.

61. Academy discriminated against Mr. Stevens and terminated Mr. Stevens because of his age in violation of Texas Labor Code Chapter 21.051 and 21.125.

62. Academy's violations of Texas Labor Code Ch. 21 damaged Mr. Stevens. Mr. Stevens seeks to recover all legal and equitable relief to which he is entitled because of the discriminatory actions of Academy in violation of Texas Labor Code § 21.051 and § 21.125.

Plaintiff's Amended Complaint                                                                                           Page 11

63. Mr. Stevens seeks to recover his back pay, front pay, compensatory damages for emotional distress and intangible harms and losses, the value of his lost employment benefits, the equitable remedy of reinstatement, front-pay, pre-judgment and post-judgment interest and his reasonable attorney's fees and costs.

### ADEA, Title VII, and Texas Labor Code Chapter 21 Retaliation Claims

64. Mr. Stevens incorporates the preceding paragraphs as if restated.

65. Academy is an "employer" as defined by 42 U.S.C. § 2000e(b), 29 U.S.C. § 630, and Tex. Labor Code § 21.002(8).

66. Mr. Stevens is an employee as defined by 42 U.S.C. § 2000e(f), 29 U.S.C. §630(f), and Tex. Labor Code § 21.002(7).

67. Mr. Stevens was qualified to perform the job duties at Academy.

68. During his employment, Mr. Stevens engaged in activity protected by Title VII, the ADEA, and Texas Labor Code Chapter 21.

69. During his employment, Mr. Stevens objected to being called ageist names by Mr. Morris.  Mr. Stevens objected to being told that he was too old and too slow to perform his job duties.  In doing so, Mr. Stevens engaged in activity protected by the ADEA and Texas Labor Code Chapter 21.

70. Academy, through Mr. Morris, fully knew of Mr. Stevens' objections to the ageist comments that Mr. Morris made about him.

71. During his employment, after some cashiers told Mr. Stevens about possible sexual harassment from the Store Manager, Mr. Morris, Mr. Stevens reported those concerns to Human Resources. In doing so, Mr. Stevens engaged in activity protected by Title VII and Texas Labor Code Chapter 21.

72. Mr. Stevens also counseled the cashiers and provided them with information about how to internally report their concerns of sexual harassment to Human Resources. In doing so, Mr. Stevens engaged in activity protected by Title VII and Texas Labor Code Chapter 21.

73. Academy, through its Human Resources department, knew of Mr. Stevens reports of harassment. Upon information and belief, Mr. Morris also knew of Mr. Stevens' participation and assistance to the cashiers who reported harassment by Mr. Morris.

74. Within just months after Mr. Stevens engaged in activity protected by law, Academy fired Mr. Stevens.

75. Academy's stated reason for firing Mr. Stevens is not the real reason it fired Mr. Stevens and is just a pretext for retaliation.

76. Academy, through Mr. Morris and Human Resources, had knowledge of Mr. Stevens protected conduct.

77. But for Mr. Stevens' protected conduct, Academy would not have terminated Mr. Stevens when it did so.

78. Academy's action in firing Mr. Stevens is an adverse employment action under the ADEA, Title VII and Texas Labor Code Chapter 21.

79. Academy's retaliatory actions were taken with malice and/or a reckless disregard for Mr. Stevens rights.

80. Academy's retaliatory actions have damaged Mr. Stevens.

81. Mr. Stevens seeks to recover the damages to which he is entitled for Academy's violation of the ADEA, Title VII and Texas Labor Code Chapter 21, including the recovery of his back pay, front pay, compensatory damages under Title VII and Texas Labor Code Chapter 21, liquidated damages under the ADEA, the equitable right of reinstatement or front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs.

## Jury Trial

82. Mr. Stevens demands a trial by jury.

## Prayer

WHEREFORE, Plaintiff James Stevens prays this Court enter a judgment for Mr. Stevens and against Academy, Inc. on all claims asserted against it and for such other and further relief to which Plaintiff is just entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Fitzgerald Law, PLLC

8150 N. Central Expy, 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
(214) 367-6001 (fax)
karen@fitzgerald.law

Attorney for Plaintiff James Stevens